IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
                              )
ROWLAND HARLEY,               )
                              )
        Plaintiff,            )
                              )
     v.                       )        1:06CV00768
                              )
ELAINE CHAO, Secretary of     )
Labor, United States         )
Department of Labor,          )
                              )
        Defendant.            )
```

<u>MEMORANDUM OPINION AND ORDER</u>

OSTEEN, District Judge

Plaintiff Rowland Harley ("Plaintiff") filed this action against Defendant Elaine Chao, Secretary of Labor ("Defendant"), alleging that the remedy awarded in Plaintiff's employment discrimination action before the Department of Labor and then the Equal Employment Opportunity Commission ("EEOC") was incomplete and inadequate without the full award of attorney's fees Plaintiff sought. Defendant has moved to dismiss Plaintiff's complaint, or in the alternative, for summary judgment, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), improper venue pursuant to Rule 12(b)(3), and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Plaintiff has moved for leave to file

an amended complaint pursuant to Rule 15(a).  This matter is
before the court on the aforementioned motions.

I.    **FACTUAL BACKGROUND**

The following facts are presented in the light most
favorable to Plaintiff.[1]  Plaintiff is a black male who, in 1998,
along with several others including Ellen Bishop, a white female,
applied for the position of GS 05/07/09 Wage and Hour Compliance
Specialist (the "Position") in the United States Department of
Labor's ("Department of Labor" or the "Agency") District Office
in Charlotte, North Carolina.  Because Plaintiff was allegedly
the most qualified candidate for the Position, the Agency's
Acting District Director, John Blaine, recommended Plaintiff for
the Position.  Agency Regional Administrator Alfred H. Perry
overruled the recommendation and instead chose Ellen Bishop to
fill the Position.

In response to the Regional Administrator's hiring decision,
Plaintiff filed with the Agency a charge of employment
discrimination on the basis of race and sex against Defendant.
After a hearing before an Administrative Law Judge ("ALJ"), the
ALJ determined that Plaintiff had been the victim of racial
discrimination and ordered the Agency to provide Plaintiff "full

---

[1] In considering a motion to dismiss, the court must
construe the facts in the light most favorable to Plaintiff.  See
Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849
(1969); Randall v. United States, 30 F.3d 518, 522 (4th Cir.
1994).

relief" including an offer of employment to Plaintiff for the Position or a substantially equivalent position, payment of lost earnings and back pay, costs and expenses, and attorney's fees in the amount of $17,185.00 (Mem. Supp. Def.'s Mot. Dismiss Ex. A-1 at 5-6). The Agency then issued a Final Agency Decision ("FAD") overturning the award of full relief and attorney's fees. On appeal, the EEOC's Office of Federal Operations ("OFO") vacated the FAD, approved the ALJ's finding that Plaintiff had been discriminated against on the basis of race, and reinstated the award of full relief, including the award of attorney's fees. The OFO did not find that Plaintiff had been the victim of sex discrimination. Plaintiff sought reconsideration of the attorney's fees awarded, but the OFO denied Plaintiff's request and issued him a right-to-sue letter, allowing Plaintiff to file a civil action in district court within ninety days of receiving the letter. Plaintiff claims he received the letter on June 14, 2006, and he thus timely filed suit in this court on September 12, 2006, challenging only the amount of attorney's fees awarded. Defendant moved to dismiss Plaintiff's complaint, or in the alternative, for summary judgment, for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. In response, Plaintiff moved to amend the complaint to correct deficiencies.

## II.  ANALYSIS

A. Subject Matter Jurisdiction

Because the court must have subject matter jurisdiction in order to proceed further in the case, the court will address that issue first.

Plaintiff's complaint attempts to state a claim under Title VII of the Civil Rights Act of 1964.  Title VII provides a cause of action for private and some federal employees "alleging employment discrimination on the basis of race, color, religion, sex, or national origin."  <u>Laber v. Harvey</u>, 438 F.3d 404, 415 (4th Cir. 2006); <u>see</u> 42 U.S.C. § 2000e-5(f)(1) (2007); 42 U.S.C. § 2000e-16(c) (2007).  Before seeking relief in district court, employees alleging discrimination must exhaust their remedies at the administrative level, which, for federal employees, includes filing an administrative complaint with the employing agency and then, after the agency investigates the claim and issues a FAD, if the employee chooses, filing an appeal to the OFO.  <u>Laber</u>, 438 F.3d at 415-16 (citing 29 C.F.R. § 1614.106(a), 108-10, 401(a) (2007)).  If no appeal is made to the OFO or the federal employee is aggrieved by the OFO's decision, the employee may file a civil action seeking judicial review.  <u>Id.</u> at 416; § 2000e-16(c).  A federal employee aggrieved by an OFO decision has ninety days from receipt of a notice of final action in which to file an action in district court.  <u>See</u> <u>Laber</u>, 438 F.3d at 417 n.10;

4

§ 2000e-16(c).  After receiving his right-to-sue letter from the OFO, Plaintiff filed a timely complaint in this court seeking relief in the form of additional attorney's fees.

Relying on the Fourth Circuit cases Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006), and Chris v. Tenet, 221 F.3d 648 (4th Cir. 2000), Defendant argues that Title VII's jurisdiction does not extend to Plaintiff's claim for relief which solely challenges the OFO's award of attorney's fees.  As such, Defendant argues that the court should dismiss Plaintiff's complaint either for lack of subject matter jurisdiction pursuant to Chris or for failure to state a claim pursuant to Laber.

In Chris, the Fourth Circuit held that the grant of jurisdiction to district courts to hear Title VII actions found in § 2000e-5(f)(3) does not extend to actions solely for attorney's fees and costs incurred during the administrative process, but rather covers only "legal proceedings . . . to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin." Chris, 221 F.3d at 655.  As such, the court affirmed dismissal of the plaintiff's claim for fees and costs for lack of subject matter jurisdiction.  See id. at 649, 655.

In Laber, the Fourth Circuit distinguished Chris and reached the opposite conclusion on the issue of subject matter

jurisdiction, but the court nevertheless held that the defendant had been entitled to judgment as a matter of law on the claim, which requested only additional relief.  See Laber, 438 F.3d at 424-26.  In Laber, the plaintiff, a civilian Army employee, received an OFO determination that the Army had discriminated against him on the basis of religion and was awarded some relief but not the entire amount he sought.  Id. at 409-10. Dissatisfied with the amount awarded, the plaintiff filed a complaint in district court seeking additional relief on the religious discrimination claim, including additional back pay, benefits, attorney's fees, and costs, but not putting the underlying religious discrimination issue before the court.[2]  Id. at 412-13.  The district court found that because Laber had not put the underlying religious discrimination back at issue along with the claim for additional relief arising out of that discrimination claim, the court lacked subject matter jurisdiction over Laber's claim for additional relief.  Id. at 413-14.  As such, the district court granted the Army's motion for summary judgment on the claim.  Id.

---

[2] Laber also alleged age discrimination and retaliation based on a separate event.  Laber, 438 F.3d at 412-13.  However, for the purposes of this case, it is important that for the religious discrimination claim, Laber did not put before the court the issue of whether religious discrimination occurred but instead sought only additional relief based on the OFO's original determination.

At the time Laber was decided, the question of whether a federal employee could bring an action under Title VII challenging only the OFO's remedy was unsettled.  At least one Fourth Circuit case had come close to holding that Title VII does not confer jurisdiction over claims solely for additional relief,[3] but two other Fourth Circuit cases had held that Title VII jurisdiction does extend to such cases.  See id. at 417-18 (citing Pecker v. Heckler, 801 F.2d 709 (4th Cir. 1986); Morris v. Rice, 985 F.2d 143 (4th Cir. 1993)).

On appeal, overruling Pecker and Morris and joining the other circuits that have addressed the issue, the Fourth Circuit held that "Title VII does not authorize a federal-sector employee to bring a civil action alleging only that the OFO's remedy was insufficient.  Rather, in order properly to claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue." Id. at 423-24 (citations omitted).  Despite this holding, the court of appeals found that the trial court had erred in determining that it lacked subject matter jurisdiction over Laber's claim for additional relief.  See id. at 426.  Distinguishing Chris and

---

[3] See Laber, 438 F.3d at 424-25 (discussing Chris, which had a slightly different factual situation and in which the court held that Title VII does not grant jurisdiction to claims solely for fees and costs).

declining to extend the case beyond its specific facts,[4] the Fourth Circuit held that the trial court had had subject matter jurisdiction over Laber's claim for additional relief but that the Army had been entitled to judgment as a matter of law on the claim.[5]  <u>Id.</u> at 424-26.

The court reasoned that since <u>Chris</u> was decided, the Fourth Circuit and the majority of the other circuits have held that 28 U.S.C. § 1331 provides an additional source of subject matter jurisdiction for claims arising under Title VII.  <u>Id.</u> at 425 (citations omitted).  Section 1331 grants a district court subject matter jurisdiction when "the right of the petitioners to recover . . . will be sustained if the Constitution and laws of the United States are given one construction and will be defeated

---

[4] The <u>Laber</u> court noted that <u>Chris</u> involved a claim for fees and costs, while Laber's claim was for additional relief.  <u>See</u> <u>Laber</u>, 438 F.3d at 424-25.  In addition, the court noted that the court in <u>Chris</u> had narrowly considered subject matter jurisdiction under § 2000e-5(f) because the parties had not raised the issue of an alternate basis for jurisdiction.  <u>Id.</u> at 425.  As such, <u>Chris</u> did not hold that subject matter jurisdiction is lacking over claims for fees and costs under any basis for jurisdiction other than § 2000e-5(f).  <u>Id.</u>

[5] The court noted that "if the district court believed that it lacked subject-matter jurisdiction over Laber's claim for additional relief, the proper course would have been to dismiss the claim instead of granting summary judgment on it."  <u>Laber</u>, 438 F.3d at 414.  However, because the court held that the district court's finding of lack of subject matter jurisdiction was erroneous and the district court thus had had the authority to enter judgment for the Army, the court did not reverse the grant of summary judgment on this ground.  <u>Id.</u>  The court, however, did vacate the grant of summary judgment on other grounds.  <u>See</u> <u>id.</u> at 432.

if they are given another." Id. (quoting Bell v. Hood, 327 U.S. 678, 685, 66 S. Ct. 773, 777 (1946)). Deciding how to rule on Laber's claim involved determining "whether a federal-employee plaintiff who prevails before the OFO may seek only additional relief in the district court . . . ." Id. at 425-26. The court thus held that "[b]ecause . . . resolution of Laber's claim for additional relief required interpretation of Title VII, a federal law, the district court had subject matter jurisdiction over Laber's claim under § 1331." Id. at 425. Nevertheless, because the Laber court definitively held that Title VII does not authorize claims merely for additional relief, the court found that the Army had been entitled to judgment as a matter of law on the religious discrimination claim. See id. at 426.[6]

In holding that the trial court had subject matter jurisdiction over Laber's claim, the court cautioned that "district courts may lack jurisdiction over future claims similar to Laber's claim under the insubstantiality doctrine." Id. at 425 (emphasis added) (citing Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S. Ct. 1372, 1378-79 (1974) ("[F]ederal courts are without

---

[6] The reason the court held that the Army was entitled to judgment as a matter of law rather than dismissal for failure to state a claim was because the case had proceeded to summary judgment. See Laber, 438 F.3d at 424. The court indicated but did not expressly state, that dismissal for failure to state a claim is the proper course for a claim solely for additional relief under Title VII if the court has subject matter jurisdiction under § 1331 and the defendant moves to dismiss. See id.

power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.") (internal quotation marks and citations omitted)).

Unsure which basis for dismissal is proper in light of <u>Laber</u> and <u>Chris</u>, Defendant requests that Plaintiff's claim be dismissed either for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.  Plaintiff's complaint requests relief solely in the form of additional attorney's fees, making the factual situation at bar more similar to the facts in <u>Chris</u>, in which the plaintiff requested only additional fees and costs, than <u>Laber</u>, in which the plaintiff requested additional substantive relief as well as fees and costs.  Nevertheless, examining <u>Chris</u> and <u>Laber</u> together makes it clear that Title VII itself does not authorize claims requesting solely additional relief, whether in the form of fees and costs or more substantive relief.  As such, Plaintiff's claim for additional attorney's fees could be properly dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) so long as the court has subject matter jurisdiction over Plaintiff's claim.

Therefore, the court must determine whether it has subject matter jurisdiction in order to determine the proper basis for

dismissal.  While <u>Chris</u>, in which the court affirmed dismissal
for lack of subject matter jurisdiction, bears more factual
similarity to the instant case, the <u>Laber</u> court emphasized that
the court in <u>Chris</u> did not consider subject matter jurisdiction
under § 1331, which provides an alternate basis for jurisdiction
over Title VII claims.  <u>Laber</u>, 438 F.3d at 425.  Not wishing to
depart from Fourth Circuit precedent, the court must consider
§ 1331 in making the subject matter jurisdiction determination.
If the court were to find that it does not have subject matter
jurisdiction, it would be because Title VII does not provide
jurisdiction and the federal question the claim presents is too
insubstantial to give rise to jurisdiction under § 1331.  Making
the insubstantiality determination is not a straightforward task,
because the <u>Laber</u> court held only that courts in future cases <u>may</u>
lack jurisdiction under § 1331 due to the insubstantiality
doctrine and elaborated no further.  However, due to the court's
ability to wholly avoid dismissal by granting Plaintiff's motion
for leave to amend, the court finds it unnecessary to determine
whether the court has subject matter jurisdiction over the claim
as it currently exists and thus to determine the proper basis for
dismissal.

 B. Motion to Amend

 In response to Defendant's motion to dismiss, Plaintiff
moved to amend his complaint to put the race and sex

discrimination claims back in issue and thereby correct any jurisdictional or legal deficiency in his complaint.  Because the court will allow Plaintiff to amend the complaint, the court will have subject matter jurisdiction over Plaintiff's claim and Plaintiff will have stated a claim for which relief can be granted.  Therefore, the court will no longer have reason to dismiss the complaint pursuant to <u>Laber</u> and <u>Chris</u>.

Federal Rule of Civil Procedure 15 governs amendments to pleadings.  If a pleading triggers the adversary's right to file a responsive document, Rule 15 allows a party to amend its pleading "only by leave of court or by written consent of the adverse party" when the opposing party has already filed the responsive pleading.  Fed. R. Civ. P. 15(a).  Because Defendant filed a motion to dismiss in response to Plaintiff's complaint before Plaintiff filed the motion to amend and Plaintiff did not secure Defendant's written consent, Plaintiff must seek the court's permission to amend his complaint.

Granting leave to amend is a matter within the court's discretion, <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), but "the federal rules strongly favor granting leave to amend." <u>Medigen of Ky., Inc. v. Public Serv. Comm'n of W. Va.</u>, 985 F.2d 164, 167-68 (4th Cir. 1993).  In fact, Rule 15(a) requires that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Fourth Circuit has held

that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber, 438 F.3d at 426 (citations omitted). "[O]utright refusal to grant the leave without any [of the aforementioned] justifying reason[s] appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182, 83 S. Ct. at 230.

Defendant argues that Plaintiff's motion to amend should be denied because amendment would be futile. In support of this argument, Defendant notes that Plaintiff had ninety days from receipt of the notice of final action taken in which to file a civil action in district court. See § 2000e-16(c). Plaintiff received notice of final action taken on June 14, 2006, and therefore, had until approximately mid-September 2006 to file in district court. Although his original complaint for additional attorney's fees was timely filed, Plaintiff's proposed amended complaint, which alleges new claims for race and sex discrimination, was submitted well after the September 2006 deadline. As such, Defendant argues that the new claims in the proposed amended complaint are time-barred and should be stricken from the amended complaint. Once the discrimination claims were stricken, all that would remain is the request for additional

relief, which, as discussed above, would have to be dismissed for either lack of subject matter jurisdiction or failure to state a claim.  Therefore, Defendant argues, amendment would be futile and Plaintiff's motion to amend should be denied.[7]

Interestingly, neither party raises the issue of relation back.  Rule 15(c) provides that amendments to pleadings relate back to the date of the original pleading in various circumstances, including when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(2).  Rule 15(c) serves to "provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed."  Tischler v. Baltimore Bancorp, 801 F. Supp. 1493,

_____

[7] Defendant cites Laber in support of the proposition that because Plaintiff seeks to amend his complaint by adding claims well after the expiration of the limitations period found in § 2000e-16(c), those claims are untimely and leave to amend should be denied.  However, in Laber, the court concluded that the trial court should have granted the plaintiff's motion to amend despite an untimely filing.  See Laber, 438 F.3d at 428-29.  Defendant notes that the court reversed denial of the motion to amend only because the defendant did not raise the untimeliness issue in response to the motion to amend.  While the court did state that it did not address the issue of timeliness because the issue was not raised in the motion to amend, the court did not say that the sole reason the amendment was allowed was because the defendant failed to raise the timeliness issue below.  See id.  Instead, because the issue was not raised, the court did not reach the issue and made no determination of what the result would have been had the untimeliness argument been made.  See id.

14

1497 (D. Md. 1992) (citation omitted).  This is consistent with
the Federal Rules in general, which "reject the approach that
pleading is a game of skill in which one misstep by counsel may
be decisive to the outcome and accept the principle that the
purpose of pleading is to facilitate a proper decision on the
merits."  Conley v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 103
(1957) (citation omitted).

The Fourth Circuit has focused on two issues in determining
whether an amended claim relates back to the date of the original
complaint pursuant to Rule 15(c)(2).

> First, to relate back there must be a factual nexus
> between the amendment and the original complaint. . . .
> Second, if there is some factual nexus an amended claim
> is liberally construed to relate back to the original
> complaint if the defendant had notice of the claim and
> will not be prejudiced by the amendment.

Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983) (citations
omitted).

In this case, there is a factual nexus between the original
and proposed amended complaints.  The claims in both complaints
arose out of Defendant's alleged discriminatory actions in
choosing to hire a candidate other than Plaintiff and the
administrative proceedings that resulted from those actions.  See
id. at 163 (holding that there was a factual nexus between the
plaintiffs' original claim for arbitrary dismissal and
discrimination claims added in an amended complaint where both
claims pertained to the events leading up to the plaintiffs'

termination, "and in both the termination was the ultimate wrong of which they complained"). While in the original complaint Plaintiff focuses more on the facts of the administrative proceedings, Plaintiff does reference the alleged discrimination as the underlying claim and basis for those proceedings. Then, in the proposed amended complaint, Plaintiff states the allegations of discrimination with greater detail and attempts to put the underlying discrimination back at issue along with the claim for additional attorney's fees. Because the claims in both complaints arose out of Defendant's alleged discriminatory actions and the administrative proceedings adjudicating the dispute over those actions, it is clear that the claims in the two complaints are factually linked.

Moreover, Defendant had notice of the discrimination claims and will not be prejudiced if amendment is allowed. Defendant was a party to the administrative proceedings in which Plaintiff alleged racial and sexual discrimination against Defendant. Thus, Defendant had notice of the claims and should have realized that when Plaintiff filed a civil action in district court, he might put the same discrimination claims at issue. Furthermore, Defendant will not be prejudiced by allowing Plaintiff to amend the complaint. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber, 438 F.3d at 427. Rather than an entirely new and

16

unrelated claim, Plaintiff seeks to put back at issue the alleged race and sex discrimination claims that were the subject of the administrative charge.  The Agency and the EEOC conducted proceedings on those issues, and Defendant should have preserved evidence relating to those claims in case of a district court action.  Moreover, with the case only at the motion-to-dismiss stage, the parties have not yet conducted discovery, and Defendant has ample time to gather additional evidence and prepare to address the discrimination claims.

Because the proposed amended complaint has a factual nexus to the original complaint and Defendant has notice of the claims and will not be prejudiced by allowing amendment, the court finds that Plaintiff's proposed amended complaint relates back to his original complaint pursuant to Rule 15(c)(2).  Therefore, the claims alleged in the proposed amended complaint are not time-barred, and contrary to Defendant's argument, Plaintiff's amendment would not be futile.

Defendant does not argue that Plaintiff's motion to amend satisfies one of the other reasons for disallowing amendment, including bad faith or prejudice, and the court sees no indication of either of these.  As discussed, allowing Plaintiff to amend will not prejudice Defendant.  In addition, there is no appearance of bad faith.  In response to Defendant's motion to dismiss, Plaintiff simply seeks to correct the jurisdictional or

legal deficiencies in his complaint.  In the absence of any valid reason to disallow amendment, consistent with the directive found in Rule 15(a) for courts to give leave to amend freely "when justice so requires," and in keeping with the policy behind Rule 15(c) and the rest of the Federal Rules of allowing cases to be decided on the merits, the court finds that Plaintiff should be allowed to amend his complaint to state claims for race and sex discrimination and that those claims will relate back to the date of the original complaint.

C. Venue

Defendant next argues that venue is improper in the Middle District of North Carolina and moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(3).  Venue in Title VII cases is governed by Title VII's own venue provision, 42 U.S.C. § 2000e-5(f)(3), rather than the general venue provision found in 28 U.S.C. § 1391.  <u>Perkins v. Town of Princeville</u>, 340 F. Supp. 2d 624, 626 (M.D.N.C. 2004).  Section 2000e-5(f)(3) provides that civil actions under Title VII may be brought

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . .

42 U.S.C. § 2000e-5(f)(3) (2007).

18

Defendant argues that venue is not proper in the Middle District of North Carolina under any of the grounds in § 2000e-5(f)(3).  When a defendant objects to venue pursuant to Rule 12(b)(3), the plaintiff has the burden of establishing that venue is proper in the district where the plaintiff brought the suit. Perkins, 340 F. Supp. 2d at 626 (citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996)).  Plaintiff concedes that Title VII's venue provision controls, but contrary to Defendant, Plaintiff argues that venue is proper in this district under that provision.

The first part of § 2000e-5(f)(3) provides that venue is proper in any judicial district in the state where the unlawful employment practices allegedly occurred.  § 2000e-5(f)(3); see Perkins, 340 F. Supp. 2d at 627 ("In other words, in a Title VII action brought in North Carolina, a plaintiff may bring the action in any of the three federal judicial districts within this state as long as the alleged employment discrimination occurred in North Carolina.") (emphasis added).  Plaintiff's proposed amended complaint conclusorily alleges that the unlawful employment practices occurred in North Carolina.  However, the unlawful employment acts Plaintiff actually alleges are that Defendant wrongfully discriminated against Plaintiff on the basis of race and sex when Agency Regional Administrator Alfred Perry chose a white female for the Position instead of Plaintiff.

19

Defendant notes that these acts occurred in Atlanta, Georgia, rather than North Carolina, as supported by the declaration of Carolyn Riddle, the Agency's director of operations for the Wage and Hour Division, Southeast Region.  In her declaration, Director Riddle states that she worked with Regional Administrator Perry and that all of his actions related to the decision to select Ellen Bishop over Plaintiff occurred in the Department of Labor's Atlanta, Georgia, office where the Regional Administrator has his principal office (Mem. Supp. Def.'s Mot. Dismiss Ex. A ¶¶ 4, 6).

Despite having the burden to show that venue is proper in light of Defendant's challenge, Plaintiff's response to the motion to dismiss does not expressly state that the discriminatory acts occurred in North Carolina, let alone contain an argument or any supporting information to that effect. Instead, citing only case law reemphasizing the "any district" language of § 2000e-5(f)(3), Plaintiff draws the flawed conclusion that venue is proper in this district.  With no argument otherwise, it appears that to reach this conclusion, Plaintiff must have relied solely on the complaint's bare allegation that the unlawful acts occurred in North Carolina. Although § 2000e-5(f)(3) provides that venue is proper in any district in the state where the unlawful employment practice "is alleged to have been committed," the court does not find that a

mere allegation is enough to meet Plaintiff's burden of showing
proper venue,[8] especially now that Defendant has challenged venue
and provided undisputed evidence that the acts occurred in
Georgia.  Based on Defendant's argument and supporting evidence
coupled with no contrary evidence or valid argument from
Plaintiff, the court thus finds that the alleged unlawful acts
occurred in Atlanta, Georgia.  Therefore, under the first prong
of § 2000e-5(f)(3), venue would be proper in any district in
Georgia but not in North Carolina.

Venue is also proper <u>in the judicial district</u> where the
employment records relating to the alleged unlawful acts are
maintained and administered.  Director Riddle's declaration
asserts that the relevant records had been kept in Atlanta but
were recently sent to St. Louis, Missouri, to be further
maintained (Mem. Supp. Def.'s Mot. Dismiss Ex. A. ¶ 5).
Plaintiff does not contest this assertion, and the court thus
finds that either Atlanta or St. Louis is the location of the

---

[8] The language of § 2000e-5(f)(3) can be easily
misinterpreted.  The way in which the first prong is phrased may
lead to the conclusion that it is sufficient for Plaintiff to
merely allege that the acts averred in the complaint occurred in
a particular state.  However, the cases, including the ones
Plaintiff cites, rephrase the language of § 2000e-5(f)(3) and
make it clearer that the acts alleged must have occurred in the
state for venue to be proper in any one of its districts.  <u>See,
e.g.</u>, <u>Perkins</u>, 340 F. Supp. 2d at 627 (Venue "is appropriate in
<u>any</u> judicial district in the state in which the alleged unlawful
acts occurred.").  In addition, Defendant has challenged venue,
putting the burden on Plaintiff to show that venue is proper.

records for venue purposes.  Because venue based on the location of relevant records is only proper in the district where the records are kept, the court concludes that venue is not proper in the Middle District of North Carolina on this basis.

Finally, venue is proper in the judicial district where Plaintiff would have worked but for the alleged acts.  It is undisputed that if hired for the Position, Plaintiff would have worked in the Agency's District Office in Charlotte, North Carolina.  As such, venue under § 2000e-5(f)(3)'s third basis would be proper in the Western District of North Carolina. Plaintiff argues that because venue would be proper in the Western District, as Defendant admits, venue is also proper in the Middle District.  Plaintiff's interpretation of § 2000e-5(f)(3) is incorrect.  According to the plain language of § 2000e-5(f)(3), the only time venue is proper in any district in a particular state is if it is the state where the unlawful acts allegedly occurred.  § 2000e-5(f)(3); see Perkins, 340 F. Supp. 2d at 627.  In contrast, venue based on where Plaintiff would have worked is proper only in the actual district where Plaintiff would have worked rather than any district in the state.  See § 2000e-5(f)(3).  In this case, that district is the Western District of North Carolina, and, therefore, venue based on where Plaintiff would have worked would not be proper in the Middle District of North Carolina.

Venue is thus improper in the Middle District of North Carolina under each of the bases for venue provided in § 2000e-5(f)(3). Title 28 U.S.C. § 1406(a) provides that if the plaintiff files suit in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406 (2007).[9] Rather than dismissing for improper venue, courts favor finding that it is in the interest of justice to transfer venue. Hackos v. Sparks, 378 F. Supp. 2d 632, 634 (M.D.N.C. 2005). The Fourth Circuit interprets § 1406(a) to allow transfer "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." Estate of Bank v. Swiss Valley Farms, Co., 286 F. Supp. 2d 514, 522 (D. Md. 2003) (quoting Porter v. Groat, 840 F.2d 255, 258 (4th Cir. 1988)).

---

[9] Section 2000e-5(f)(3) mentions the applicability of 28 U.S.C. § 1406, indicating that the section governs improper venue in Title VII actions. See § 2000e-5(f)(3). Courts employing § 2000e-5(f)(3) in Title VII cases have also applied § 1406 when appropriate. See, e.g., Perkins, 340 F. Supp. 2d at 626-27 (noting that § 1406 applies to cases of improper venue but declining to dismiss or transfer venue under § 1406 because venue was proper under § 2000e-5(f)(3)); Benton v. Eng, 222 F. Supp. 2d 728, 731-32 (D. Md. 2002) (noting that the district the plaintiff filed in was not a proper venue under § 2000e-5(f)(3) and using § 1406 to transfer the plaintiff's claims to another district).

For example, as this court noted, "[t]he reasons for [transferring rather than dismissing for improper venue] are especially compelling if the statute of limitations has run, so that dismissal would prevent a new suit by plaintiff." <u>Hackos</u>, 378 F. Supp. 2d at 634 (citations omitted).  This approach is consistent with the view of the Supreme Court, which held:

> [w]hen a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply.  The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure.  If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406 (a), recognized that "the interest of justice" may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . "time-consuming and justice-defeating technicalities."

<u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 467, 82 S. Ct. 913, 916 (1962) (citation omitted).  At least one Fourth Circuit court followed the same approach in a Title VII case involving the ninety-day period at issue in this case.  When the plaintiff filed suit within the ninety days but dismissal for improper venue would have rendered the plaintiff unable to re-file due to the running of that period, the United States District Court for the District of Maryland transferred to another district in the interest of justice.  <u>See</u> <u>Benton</u>, 222 F. Supp. 2d at 731-32.

In the instant case, Plaintiff filed suit in this court just within the ninety days allotted by § 2000e-16(c).  While

24

Plaintiff erred in determining a proper venue in which to file, Plaintiff satisfied the policy of the statute of limitations by making a timely filing.  The ninety-day period ended in September 2006.  If the court were to grant Defendant's motion to dismiss for improper venue, Plaintiff would be barred by the statute of limitations from filing an action in any other district.  The court finds that this would penalize Plaintiff for a technicality and that, as such, it is in the interest of justice to transfer the case pursuant to § 1406 to a district where the case could have been brought.[10]

The districts in which the case could have been brought include any of the districts in Georgia (based on where the alleged unlawful actions occurred), the Northern District of Georgia or the Eastern District of Missouri (based on where the relevant records are kept), and the Western District of North Carolina (based on where Plaintiff would have worked).  In addition, § 2000e-5(f)(3) provides that as it relates to § 1406, "the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."  § 2000e-5(f)(3).  In this case, the respondent is the Secretary of Labor, whose principal office

_____

[10] Defendant also relied on the proposition that venue is not proper in this district to support the argument that Plaintiff's motion to amend should be denied as futile.  However, because the court will transfer the case for improper venue rather than dismissing it, Defendant's argument is moot.

25

is at the United States Department of Labor in Washington, D.C.
Therefore, the case also could have been brought properly in the
District of Columbia pursuant to § 2000e-5(f)(3).

Neither party has indicated a preference for transfer to any
particular district in which venue would be proper.  In the
absence of requests from the parties, the court finds that of
these districts, the Northern District of Georgia, which includes
Atlanta, would be the most convenient and fair for the parties
and the witnesses.  The only tie the parties have to the Western
District of North Carolina is that the Agency has an office there
in which Plaintiff would have worked.  The Southern and Middle
Districts of Georgia, the Eastern District of Missouri, and the
District of Columbia bear little, if any, relation to the suit.
Therefore, in the interest of justice, the court will transfer
this action to the Northern District of Georgia.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss or, in the
Alternative, Motion for Summary Judgment [9] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to
File Amended Complaint [11] is GRANTED.  Plaintiff has 30 days
from the entry of this order in which to file his amended
complaint.

26

IT IS FURTHER ORDERED that this case be transferred from the Middle District of North Carolina to the Northern District of Georgia for further proceedings.

This the 7th day of August 2007.


_____
United States District Judge